

SAM P. ISRAEL
FOUNDER & MANAGING PARTNER

Timothy Savitsky
David Hrovat
*Associates*

180 MAIDEN LANE, 6th FLOOR, NEW YORK, NY 10038
info@spi-pc.com | T: (646) 787-9880 | F: (646) 787-9886 | www.spi-pc.com

*Via ECF*
Hon. Edgardo Ramos, U.S.D.J.
U.S. District Court for the Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, New York 10007

**MEMO ENDORSED**

December 11, 2020

        **Re:** *Sunwealth Global HK Ltd., et al. v. Pinder International, Inc. et al.*, **No. 20-cv-01436-ER**

Dear Judge Ramos:

        We write as counsel for plaintiffs Sunwealth Global HK Ltd. ("Sunwealth") and Anil Kumar Dhanwani ("Dhanwani"; together with Sunwealth, the "Plaintiffs") in the above-referenced action to request that a pre-motion conference be convened in accordance with Your Honor's individual rules of practice and Rule 37.2 of the SDNY Local Rules. The Plaintiffs seek to file a motion to compel defendants Jitander Singh Dhall, Pinder International, Inc., and 30 Below Corp. (collectively, "Defendants") to comply with the Plaintiff's discovery requests and to appear for depositions. Whereas the parties' meet-and-confer on the matter revealed that a significant amount of relevant discovery remains unproduced and whereas the Defendants have still not produced any of the outstanding discovery addressed during the meet-and-confer, the Plaintiffs also seek an extension of the discovery period to allow them sufficient time to review this unproduced material prior to deposing the Defendants.

        By way of brief background, this case is predicated on the Defendants' alleged violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962, *et seq.* and attendant state law claims. As set forth in the Amended Complaint, the Defendants engaged in a scheme whereby they would enter into purchase agreements with overseas sourcing agents (such as Sunwealth in this case) to secure the manufacture and shipment of Defendants' "Brooklyn Xpress" and "Ditch Plains" branded clothing (*e.g.*, polos, jeans, and shorts), then employed a pattern of predicate activity including wire fraud, extortion, and conversion aimed at coercing the foreign entities with which the Defendants contracted to accept reduced prices for their clothing shipments. Court records indicate no less than *nine* actions being filed against Dhall and his various corporate shell entities since 2012. These lawsuits allege among other claims, fraud, breach of contract, and outright conversion in relation to his purchase of clothing from overseas shipping agents.

Closer inspection of these actions indicate that the Defendants' operate *via* a consistent pattern of unfair and fraudulent business practices in violation of 18 U.S.C. 1962, *et seq.*

The sourcing agent in this case, Sunwealth, is just the latest victim of the Defendants' RICO enterprise. Here, the Defendants made knowingly false statements concerning the status of the shipments and made knowingly false promises of future payment on the condition that the Plaintiffs first send more clothing shipments. Already in financial extremis, the Plaintiffs had little choice but to consent to the Defendant's demands, culminating in a one-sided settlement agreement under which the Plaintiffs (desperate for payment and unrepresented by counsel) were forced to forgive more than $1 million of the Defendants' overdue payments without any evidence that the Defendants had a basis for reduced contractual prices. Then, once the goods were in their possession, the Defendants refused to make the agreed settlement payments. For his part, defendant Dhall has, for years, avoided the Plaintiffs and other creditors by moving assets between his various shell corporations, including defendants Pinder International, Inc. 30 Below Corp., and Bedford Inc. And though Sunwealth has only received a sliver of discovery in this action, it has already identified additional shell corporations controlled by defendant Dhall—including Time Square Food Corp. and Seena International, Inc.—all of which operate interchangeably for the same fraudulent purposes.

Civil RICO claims are inherently complex and require significant factual support. As this Court has been advised in the parties' multiple requests for discovery extensions, the Plaintiffs' discovery efforts have been significantly delayed by the COVID-19 pandemic, by the departure of Timothy Foster, Esq. from our firm in mid-September, and by Mr. Israel's unexpected and extended hospitalizations for personal health reasons between September and December (Mr. Israel's hospitalizations have, cumulatively, lasted for more than a month since September). Now, new delays are caused by the Defendants' refusal to produce critical documents/information and to schedule depositions. With numerous discovery deadlines quickly approaching, it appears judicial intervention is necessary.

On November 12th, our office sent the Defendants a meet-and-confer agenda identifying numerous holes in their discovery responses and requesting the imminent scheduling of depositions. Unfortunately, due to Defendants' counsel, Jared Louzan, Esq., being diagnosed with COVID-19 after the issuance of the Court's most recent discovery extension, counsel were unable to meet and confer until December 1st.[1] During two conversations held on December 1st and 2nd, the parties discussed:

---

[1] Given Mr. Louzan's extension of numerous professional courtesies with regards to Mr. Israel's own health issues—as well as the seriousness of the pandemic—we certainly do not place any blame on the Defendants or their counsel for this delay.

- The Defendants' agreement to provide a proposed confidentiality agreement by the end of that week (December 4th).

- The Defendants' agreement to produce outstanding discovery, including:

    o Texts, emails, and WhatsApp messages exchanged by the parties;

    o Documents, photographs, and communications of any kind concerning the Defendants' purported complaints that the clothing shipments received by them were "nonconforming";

    o Copies of checks and wires reflecting payments made to the Plaintiffs; and

    o The Defendants' tax and bank records once the confidentiality agreement was executed.

- The Defendants' allegation—made for the first time during the December 1st meet and confer—that (a) all corporate financial records concerning their purchases and sales of goods were held by a *third-party* online service and (b) the Defendants no longer had access to that service or those records. Though the Defendants agreed to provide the name of that third-party custodian, they have yet to do so.

- The Defendants' agreement to identify all custodians of electronically store information that were searched and the terms were used in that search.

- The Defendants' agreement to provide revised responses to the Plaintiffs' discovery requests in order to indicate which categories of documents were not in their possession or did not exist.

- The Defendants' agreement to produce corporate formation documents for Times Square Food Corp., one of the related entities controlled by defendant Dhall.

- The Defendants' agreement to provide an explanation for the redactions contained in document production (which were largely comprised of documents produced in a different case and not produced in direct response to the Plaintiffs' document demands herein).

- The Defendants' agreement to check their schedules and then confirm their availability to appear for depositions on December 29th and 30th.

As of December 11, 2020, the Defendants have not provided any of the names, information, proposed agreements, or documents that they agreed to produce. Nor have they confirmed their availability for the proposed deposition dates. The Plaintiffs have virtually no information on the financial status of Dhall's various companies or evidence (in the form of photographs, emails, or other documents) indicating that the clothing shipments Dhall accepted at a $1 million discount were defective in any way. The Plaintiffs' subsequent requests for updates on the status of the outstanding discovery and for a meeting to discuss ESI protocol have also been left answered. *See* Exhibit A enclosed herein (comprising emails between counsel).

The parties' meet-and-confers have thus failed to satisfactorily resolved many of the outstanding discovery issues—particularly those concerning demands for the Defendants' financial documents, sales records, and proof of non-conformity. And the Defendants' continued recalcitrance in producing discovery or scheduling depositions in the face of quickly approaching deadlines severely prejudices the Plaintiffs. Without the Court's intervention to instill the Defendants' cooperation, the Plaintiffs are unable to adequately pursue their claims.

For the foregoing reasons, the Plaintiffs respectfully request a pre-motion conference in anticipation of filing a motion seeking to compel compliance with their discovery requests and deposition notices, and for a stay of this action until the Defendants have complied.[2]

> A discovery conference will be held remotely and by telephone on December 22, 2020 at 10am. The parties are instructed to call (877) 411-9748 and enter access code 3029857# when prompted. Defendants may file a response to this letter by no later than December 18, 2020. IT IS SO ORDERED.
>
> _____
> Edgardo Ramos, U.S.D.J
> Dated: 12/14/2020
> New York, New York

Respectfully submitted,

**SAM P. ISRAEL, P.C.**

By:   */s/ Timothy Savitsky*
Timothy Savitsky, Esq. (TS 6683)
David Hrovat, Esq. (DH 9936)
180 Maiden Lane, 6th Floor
New York, NY 10038
T: 646-787-9880 | F: 646-787-9886
*Attorneys for Plaintiffs*

Enclosures.

---

[2] Enclosed herein as Exhibit B is a true and correct copy of the Defendants' Response to the Plaintiffs' first set of Document Demands.