UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SUNWEALTH GLOBAL HK LTD. and ANIL
KUMAR DHANWANI,

                         Plaintiffs,

                – v. –

PINDER INTERNATIONAL, INC., 30
BELOW CORP. f/k/a CKEL GENERATION
CORP., and JITANDER SINGH DHALL,
                              Defendants.

**OPINION AND ORDER**

20 Civ. 1436 (ER)

Ramos, D.J.:

Sunwealth Global HK Ltd. ("Sunwealth") and Anil Kumar Dhanwani ("Dhanwani")

bring this action against Pinder International Inc. ("Pinder"), 30 Below Corp. f/k/a Ckel

Generation Corp. ("30 Below"), and Jitander Singh Dhall ("Singh")[1] (collectively, "Defendants")

for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962,

("RICO") and for conspiracy to violate RICO.  Doc. 27, Am. Compl.  Now pending before the

Court is Defendants' motion to dismiss this action, or in the alternative, to stay this action

pending the resolution of a state court action between the same parties.  Doc. 30.  For the reasons

set forth below, the motion to dismiss or stay on the basis of a pending state court action is

DENIED, and the motion to dismiss for failure to state a claim is GRANTED.  Plaintiffs are

granted leave to file an amended complaint.

---

[1] Referred to in Plaintiffs' papers as "Dhall" and in Defendants' papers as "Singh."

## I.    BACKGROUND[2]

### A.    Shipments of Goods Between June 2016 and July 2017

Sunwealth is a Chinese corporation headquartered in Hong Kong, of which Dhanwani, a resident of India, is the principal and sole shareholder.  Am. Compl. ¶¶ 3–4.  Pinder and 30 Below are corporations domiciled in New York, and Plaintiffs allege Singh is the president, principal officer, and sole or controlling shareholder of Pinder and 30 Below.  *Id*. ¶¶ 5–7.

From June 2016 to July 2017, Plaintiffs and Defendants were engaged in a business relationship in which Plaintiffs shipped clothing items, including fleece hoodies, joggers, shorts, and denim jeans (the "Goods"), to Defendants pursuant to purchase orders.  *Id*. ¶ 13.  During this time period, Sunwealth produced and sent thirty-five shipments of Goods to Defendants.  *Id*. ¶¶ 13, 22.  These shipments totaled 563,350 units for a value of $1,942,896.00.  *Id*. ¶ 22. Plaintiffs allege that each shipment was the result of a specific order or request from at least one Defendant and that each shipment was documented by an invoice, a sales contract, and shipping documents, such as a Bill of Lading, which were all transmitted to Defendants.  *Id*. ¶¶ 16–18. Plaintiffs only shipped the Goods after receiving assurances of payment from Singh or another employee of Pinder or 30 Below, and for each shipment, payment was due approximately one month after the shipment was made.  *Id*. ¶¶ 19–20.  Plaintiffs allege that Defendants have consistently failed to pay the full amount due.  *Id*. ¶ 21.  Each shipment of Goods was delivered to the Port of New York, pursuant to Defendants' instructions, and Defendants were responsible

---

[2] The following facts have been taken from the allegations in the Amended Complaint, which the Court accepts as true for the purposes of this motion.  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

for clearing and arranging release orders for each shipment with Sunwealth's authorization.[3]  *Id.* ¶¶ 47–48.

During this time period, Plaintiffs allege that Singh and other representatives of 30 Below and Pinder made representations to Plaintiffs that payment for these shipments had been made, despite these payments never being received.  *Id.* ¶ 24.  On November 25, 2016, Dhanwani sent Singh an email regarding an overdue balance of $717,622.00 for Goods that had been shipped and already cleared through customs by that date.  *Id.* ¶ 25.  Singh allegedly responded by telephone.  *Id.* ¶ 26.  Dhanwani discussed their phone conversation in an email to Singh, emphasizing that Singh had assured Dhanwani that the overdue balance would be paid in its entirety in the next week.  *Id.*  Singh also allegedly sent an email the same day promising payment "after the holiday."  *Id.* ¶ 27.  In early January 2017, Singh allegedly told Dhanwani that a payment of $100,000.00 would be made to Plaintiffs on January 5, 2017, with more to follow, but only $76,859.76 was paid on January 7, 2017.  *Id.* ¶¶ 30–31.

Sunwealth alleges that, prior to February 2017, Defendants had always cleared the goods without incident upon arrival in New York.  *Id.* ¶¶ 48–49.  However, Sunwealth alleges that between February 2017 and March 2017, Defendants failed to clear four containers of Goods (the "Uncleared Containers").  *Id.* ¶ 50.  As a result, three of these containers were left at the port for over two years, incurring significant demurrage and other costs.  *Id.* ¶ 52.  The precise reason these containers were not cleared is not apparent from the Amended Complaint.  Sunwealth alleges that it did not authorize the release of the three containers to Defendants, in part because

---

[3] While Plaintiffs do not explicitly define "clearance" or "release" in the Amended Complaint, it appears that once a shipment reached the Port of New York, Defendants were responsible for "clearing" the shipments through proper channels (presumably customs and other port authorities) and obtaining releases for those shipments from the port. *Id.* ¶ 48.  It also appears this process required at some point the authorization of Plaintiffs to release the shipments. *Id.* ¶ 59.

of Defendants' failure to clear them, and "in part due to the Defendants' repeated failure to pay Sunwealth for previous shipments of Goods." *Id*. ¶ 51.[4]  The Uncleared Containers allegedly contained Goods worth $242,036.76.  *Id*. ¶ 55.  Sunwealth alleges that Defendants later took the Goods from the three Uncleared Containers without Sunwealth's authorization and without submitting payment to Sunwealth.  *Id*. ¶ 54.

In early July 2017, Singh allegedly told Dhanwani that a payment on the unpaid balance owed on the Goods had been sent on behalf of 30 Below and Pinder.  *Id.* ¶ 38.  On July 10, 2017, Dhanwani sent Singh an email stating that Singh had not yet paid.  *Id*. ¶ 39.  On August 21, 2017, Dhanwani sent Singh a text message requesting the overdue payment.  *Id.* ¶ 40.  Singh allegedly responded on the same day, saying "I am sending," but no payment was made.  *Id*. ¶ 41.  On August 23, 2017, Dhanwani emailed Singh about the overdue payments and stated that Sunwealth required those payments to function as a business.  *Id*. ¶ 68.  On August 27, 28, and 30, 2017, Dhanwani again sent Singh emails asking for payment and stating that Sunwealth was unable to operate without the funds and urgently needed payment on the overdue invoices.  *Id*. ¶¶ 69–72.  On August 31, 2017, Singh allegedly made oral promises to Dhanwani that Defendants would send at least $68,000.00 by the end of August and would clear the Uncleared Containers still at the port.  *Id*. ¶ 74.  On September 1, 2017, Dhanwani emailed Singh because Defendants had not made the promised payments, and the Uncleared Containers had still not been cleared.  *Id*. ¶ 75.  On September 4 and 8, 2017, a Sunwealth employee and Dhanwani, respectively, sent emails to Singh referencing the alleged oral promise made by Singh to pay the overdue balance.  *Id*. ¶ 76.  No such payments had been made when the emails were sent.  *Id*.

---

[4] Sunwealth later did agree to release one of these containers to Defendants as part of the First Agreement, described *infra* Section I.B.

¶¶ 76–77.  On September 11, 2017, Dhanwani emailed Singh to report that Defendants' failure to pay and Sunwealth's corresponding inability to pay its own suppliers had led to three factories shutting down and Dhanwani losing his personal residences and cars in China.  *Id*. ¶ 78. Dhanwani sent Singh a text message to send payment, and Singh allegedly responded saying he could not pay until Dhanwani released a bill of lading, which would allow Defendants to clear a shipment of Goods without paying for it. [5]  *Id*. ¶ 60.  Dhanwani later sent another text message to Singh asking for payment, to which Singh allegedly responded that he would make a payment only if a bill of lading for the Goods was released. [6]  *Id*. ¶¶ 42–43.  No payment was made on that date.  *Id*. ¶ 44.

Because of Defendants' failure to pay for the Goods, Sunwealth represents that, by mid-2017, it was in "dire financial distress" and unable to pay the companies Plaintiffs used to manufacture the Goods.  *Id*. ¶ 63.  Dhanwani represents that he exhausted his personal savings to keep Sunwealth afloat and that he was receiving demands for payment and threats from Sunwealth's suppliers in China.  *Id*. ¶¶ 63, 73.

**B.     First and Second Settlement Agreements**

Plaintiffs allege that Singh approached Dhanwani to make a deal requiring Sunwealth to release the Uncleared Containers, and on October 30, 2017, Pinder, 30 Below, and Sunwealth entered into a Settlement Agreement (the "First Agreement").  *Id*. ¶¶ 117–18.  Plaintiffs allege that Singh forced the First Agreement on them because Singh knew Sunwealth desperately needed funds, and that Singh told Sunwealth the only way it would get money from Defendants

---

[5] The Complaint states that this text message was sent on August 22, 2018.  However, because this date is after both settlement agreements and after Plaintiffs released one of the Uncleared Containers, discussed *infra*, the date is likely an error.

[6] Similarly, the Complaint lists the date of this text message as September 17, 2018.  However, this is also likely an error.

was through the parties signing a settlement agreement.  *Id*. ¶¶ 119, 123.  The First Agreement stipulated that Defendants would pay a total of $550,000.00 to Plaintiffs in installments over six months, ending in May 2018.  *Id*. ¶ 122.  The first installment of $30,000.00 was due on November 1, 2017, and Defendants did not pay it, instead demanding an adjustment to the deal. *Id*. ¶¶ 124–25.  Plaintiffs allege that they conceded to the adjustment because Sunwealth desperately needed funds.  *Id*. ¶ 126.

On November 8, 2017, the parties entered into a revised Settlement Agreement (the "Second Agreement"), which contained a provision stating it superseded all previous agreements made between the parties.  *Id*. ¶¶ 128–29.  The Second Agreement stipulated that Defendants would pay a total of $450,000.00 over six months in installments.  *Id*. ¶ 130.  The first installment of $50,000.00 was due on November 9, 2017, after which Plaintiffs would need to immediately release one of the Uncleared Containers.[7]  *Id*. ¶ 131.  Defendants made the $50,000.00 payment on November 10, 2017, and Plaintiffs released one of the Uncleared Containers.  *Id*. ¶¶ 132–33.  Defendants did not make the second installment of $30,000.00, due on November 20. 2017, but the third installment of $30,000.00, due on December 5, 2017, was paid.  *Id*. ¶¶ 134–35.  Defendants also did not pay the required $30,000.00 installments due on December 20, 2017, January 5, 2018, and January 20, 2018.  *Id*. ¶ 137.  On January 31, 2018, Singh allegedly sent Dhanwani an email promising that payment was coming and that he needed a few more days.  *Id*. ¶ 138.  On February 3, 2018, Singh sent Dhanwani an email saying "Check bank Monday."  *Id*. ¶ 140.  However, Defendants did not make the payment, and they also did not make the required installments of $30,000.00 due on February 5, February 20, March 5,

---

[7] Plaintiffs allege that the other Uncleared Containers no longer appear in the records of the Port of New York and that, upon information and belief, a third party (Defendants' "freight forwarder Sea Master") removed the Goods from the Uncleared Containers without Sunwealth's authorization.  *Id*. ¶¶ 53–54.

March 20, and April 5, 2018.  *Id*. ¶¶ 144–45.  Defendants additionally missed three payments of $30,000.00 between April and May 2018, and the final payment of $10,000.00 due on June 5, 2018.  *Id*. ¶¶ 145–47.  Defendants did make smaller payments between April and November 13, 2018, collectively totaling $22,800.00  *Id*.  In total, Defendants paid $102,810.00 of the $450,000.00 due under the Second Agreement, and Sunwealth fulfilled all of its obligations under the agreement.  *Id*. ¶¶ 149–50.

## C.   The State Court Action

On March 19, 2019, Sunwealth and Dhanwani filed a complaint in New York County Supreme Court against Pinder, 30 Below, and Singh, in a case captioned *Sunwealth Global HK Ltd. v. Pinder Int'l, Inc.*, Index No. 651634/2019[8] (the "State Court Action").  Doc. 32-1, Louzon Decl., Ex. A.  In the ongoing State Court Action, Plaintiffs seek judgment on all unpaid balances owed from Defendants, with interest, damages for Plaintiffs' loss of business and assets in China, damages for unjust enrichment, punitive damages, declaratory judgments that Plaintiffs are not bound by the First and Second Agreements, damages due to emotional distress, and attorneys' fees.  *Id*.

## D.   The Instant Action

On February 20, 2020, Plaintiffs filed the initial complaint in this action.  Doc. 9, Compl. On May 28, 2020, Defendants filed a motion to dismiss or alternatively stay this action.  Doc. 24. On June 18, 2020, Plaintiffs filed an amended complaint, bringing the same claims as in their initial complaint but alleging additional facts.  Am. Compl.  Plaintiffs allege RICO violations and conspiracy to commit RICO violations, and seek compensatory and punitive damages, trebled under 18 U.S.C. § 1964(c), declaratory judgments that Plaintiffs are not bound by the

---

[8] Defendants' moving papers reference the State Court Action as being docketed as Index No. 651635/2019, but the attached complaint indicates that the docket number is Index No. 651634/2019.  Louzon Decl., Ex. A.

First and Second Agreements, and attorneys' fees.  *Id.*  In the Amended Complaint, Plaintiffs also reference several other cases filed in this district and in New York County Supreme Court against one or more Defendants to support their theory of a pattern of racketeering.  *Id.* ¶¶ 156–73.  On July 2, 2020, Defendants filed the instant motion to dismiss the amended complaint or alternatively stay the action.  Doc. 30.

## II.   LEGAL STANDARD

### A.   The Court's Discretion to Stay

A stay is "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case."  *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926).  A court may stay proceedings in one suit to abide by the proceedings in another even if the parties or the issues in the two cases are not identical.  *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).  Yet the Court's discretion is not unguided.  *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996).

Courts examining motions to stay consider five factors:  "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest."  *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp. 2d 367, 370 (S.D.N.Y. 2013); *see also Tradewinds Airlines, Inc. v. Soros*, No. 08 Civ. 5901 (JFK), 2009 WL 435298, at *4 (S.D.N.Y. Feb. 23, 2009) (staying a civil case pending the disposition of a contested default judgment before the Superior Court of the State of North Carolina).  In balancing these factors, courts must make a case-by-case determination, in which "the basic goal" is to avoid prejudice.

*Volmar Distribs., Inc. v. N.Y. Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993).  "The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).

**B.    Rule 12(b)(6) Motion to Dismiss**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).  However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

**C.    Extrinsic Materials Considered for a Rule 12(b)(6) Motion to Dismiss**

"When presented with a motion to dismiss pursuant to Rule 12(b)(6), the court may consider documents that are referenced in the complaint, documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."  *Silsby v. Icahn*, 17 F. Supp. 3d 348, 354 (S.D.N.Y. 2014) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).  Furthermore, reliance must "render[ ] the document 'integral' to the complaint."  *Chambers*, 282 F.3d at 153.  For a court to regard a document as "integral," "it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document" and "[i]t

9

must also be clear that there exist no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). *See also Davis v. McCready*, 283 F. Supp. 3d 108, 118 (S.D.N.Y. 2017) ("[A] court may only consider material extrinsic to the complaint in evaluating a motion to dismiss when the extrinsic material is 'either in [the] plaintiff['s] possession' or is material 'of which [the] plaintiff[ ] had knowledge and relied on in bringing suit.'").

Here, Defendants attach to their motion to dismiss (1) the complaint filed in the State Court Action, Louzon Decl., Ex. A, and (2) Defendants' Answer and Counterclaims to the State Court Action, Louzon Decl., Ex. B. The Court may take judicial of these documents. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

## III.   DISCUSSION

### A.   First-Filed Rule

Defendants argue that this action should be dismissed or stayed pursuant to the first-filed rule. The first-filed rule holds that, "in determining the proper venue, '[w]here there are two competing lawsuits, the first suit should have priority.'" *N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (quoting *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006)). Courts in this district have held that the first-to-file doctrine only applies "where there is concurrent *federal* litigation, not where a federal court contends with concurrent state litigation." *Port Auth. of N.Y. & N.J. v. Kraft Power Corp.*, No. 11 Civ. 5624 (HB), 2012 WL 832562, at *1 (S.D.N.Y. Mar. 13, 2012). *See also Lan Sang v. Ming Hai*, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013) (declining to transfer plaintiff's claim to state court, pursuant to the

first-to-file doctrine, when defendants had commenced litigation against plaintiff prior to the federal action); *C Fink Family Tr. ex rel. Landau v. Am. Gen. Life Ins. Co.*, No. 10 Civ. 9230 (JSR), 2011 WL 1453793, at *1 (S.D.N.Y. Apr. 7, 2011) (finding that abstention, as opposed to the first-filed rule, was more appropriate when determining whether to dismiss a federal case in favor of a concurrent state court action); *Alpine Grp., Inc. v. Johnson*, No. 01 Civ. 5532 (NRB), 2002 WL 10495, at *4 (S.D.N.Y. Jan. 3, 2002) ("It is important to note that the 'first to file' rule does not control in this matter because only one of the two actions is a federal action."); *Radioactive, J.V. v. Manson*, 153 F. Supp. 2d 462, 473 (S.D.N.Y. 2001) ("The first-to-file doctrine applies to concurrent federal litigation—not concurrent state/federal litigation.").

Defendants cite *Pike v. WSNCHS E., Inc.*, No. 02 Civ. 3365 (GBD), 2003 WL 548884 (S.D.N.Y. Feb. 25, 2003), which applied the first-filed rule to concurrent federal and state litigation, but even the cases relied on in *Pike* involve only concurrent federal cases. *See First City Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76 (2d Cir. 1989) (applying the first-filed rule to two concurrent federal actions in the Western District of Oklahoma and this district); *Ontel Prods., Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144 (S.D.N.Y. 1995) (applying the first-filed rule to concurrent federal litigations in the District of New Jersey and this district).

Thus, the weight of authority in this Circuit is that the first-filed rule only applies when a Court is faced with concurrent federal actions. The rule is therefore inapplicable in this case. Rather the principles of abstention provide the more appropriate avenue to analyze concurrent federal and state litigation.

### B.   *Brillhart* Abstention

Defendants argue that abstention is appropriate under the *Brillhart* doctrine, given the existence of the State Court Action. *See Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942). "Under the abstention doctrine laid out in *Brillhart*, . . . district courts possess discretion in

determining whether and when to entertain an action under the Declaratory Judgment Act when there are parallel state proceedings even when the suit otherwise satisfies [federal] subject matter jurisdictional prerequisites." *Gustavia Home LLC v. VVS1 Corp.*, 805 F. App'x 82, 83 (2d Cir. 2020) (internal citation and quotation marks omitted).

However, the Second Circuit has determined that "[i]t is well-established . . . that a district court may not invoke *Brillhart* abstention if the suit before it involves claims for damages as well as a request for declaratory relief." *Gen. Star Indem. Co. v. Anheuser-Busch Cos.*, 199 F.3d 1322, 1999 WL 1024708, at *1 (2d Cir. 1999). Since the action before the Court involves claims for damages in addition to a request for a declaratory judgment, *Brillhart* cannot apply, and abstention under *Brillhart* is inappropriate.

## C. *Colorado River* Abstention

Defendants argue that abstention is also appropriate under the *Colorado River* standard. Federal courts may abstain from exercising jurisdiction over an action for which there is a parallel state court proceeding, based on considerations of "wise judicial administration [and] giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (quoting *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S. 180, 183 (1952)). The burden of persuasion is with the party seeking abstention. *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of New York*, 762 F.2d 205, 210 (2d Cir. 1985).

"Generally, as between state and federal courts, the rule is that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the [f]ederal court having jurisdiction.'" *Colorado River*, 424 U.S. at 817 (quoting *McClellan v. Carland*, 217 U.S. 268, 282 (1910)). However, the Supreme Court has recognized several categories of circumstances in which abstention may be appropriate. *See, e.g.*, *id.* at 814; *Younger v. Harris*,

12

401 U.S. 37, 43–44 (1971); *Burford v. Sun Oil Co.*, 319 U.S. 315, 332 (1943); *R.R. Comm'n of Tex. v. Pullman Co.*, 312 U.S. 496, 498 (1941).  These abstention doctrines pose "extraordinary and narrow exception[s]" to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them."  *Colorado River*, 424 U.S. at 813, 817 (citations omitted).

*Colorado River* abstention is only warranted in "exceptional circumstances."  *Colorado River*, 424 U.S. at 813.  In determining whether abstention is warranted under *Colorado River*, courts consider six factors:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction, (2) whether the federal forum is less inconvenient than the other for the parties, (3) whether staying or dismissing the federal action will avoid piecemeal litigation, (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other, (5) whether federal law provides the rule of decision, and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

*Woodford v. Cmty. Action Agency of Greene Cnty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted).  "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."  *Royal & Sun All. Ins. Co. of Canada v. Century Int'l Arms, Inc.*, 466 F.3d 88, 94 (2d Cir. 2006) (quoting *Colorado River*, 424 U.S. at 818-19).  The balance of these factors is "heavily weighted in favor of the exercise of jurisdiction."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

In order to determine whether to abstain under *Colorado River*, a court starts with deciding whether the concurrent federal and state proceedings are "parallel" in nature.  *See Fernandez v. City of New York*, No. 17 Civ. 2431 (GHW) (SN), 2017 WL 2894144, at *2 (S.D.N.Y. July 7, 2017) (citing *Dittmer v. County of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)).  Federal and state proceedings are "parallel" for abstention purposes when "substantially the same

parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 100 (2d Cir. 2012) (internal quotation marks and citation omitted). Perfect symmetry is not required. Rather, "parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields v. Murdoch*, 891 F. Supp. 2d 567, 577 (S.D.N.Y. 2012) (emphasis in original) (internal quotation marks and citation omitted).

In this case, the parties in both actions are identical – Sunwealth and Dhanwani are the only plaintiffs in both cases, and Pinder, 30 Below, and Singh are the only defendants in both cases. Further, the facts upon which both cases rest – the business dealings between the parties during the time period of June 2016 to July 2017 – are the same. The only asymmetry that exists between the two actions is that federal RICO claims are brought in this action while the State Court Action centers around breach of contract claims.

While Plaintiffs could have asserted their RICO claims in state court, *Tafflin v. Levitt*, 493 U.S. 455, 467 (1990) (holding that state courts have concurrent jurisdiction over civil RICO actions), the Court must analyze whether the two actions in question are "*currently* parallel." *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 348 (E.D.N.Y. 2008) (emphasis in original) (citing *Crawley v. Hamilton Cnty Comm'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("While it may be true . . . that [the state court action] *could* be modified so as to make it identical to the current federal claim, that is not the issue here. The issue is whether [the state court action], as it *currently* exists, *is* a parallel, state-court proceeding." (emphasis in original))). Plaintiffs have not brought their RICO claims in the State Court Action, and therefore there is not "a substantial likelihood that the state litigation will dispose of *all* claims presented in the federal case." *Shields*, 891 F. Supp. 2d at 577 (internal quotation marks and citation omitted) (emphasis in

original).  That is, the resolution of the State Court Action will not resolve Plaintiffs' RICO claims.  Further, if there is "[a]ny doubt regarding the parallel nature of a federal and state action," then it "should be resolved in favor of the exercise of federal jurisdiction."  *Id.* (internal quotation marks and citation omitted).

Therefore, the Court finds *Colorado River* abstention is inappropriate here since the State Court Action would not dispose of all claims presented in the federal case, and the question of parallelism between the actions weighs against abstention here.

**D.  Substantive RICO Claims**

Plaintiffs allege that all Defendants violated 18 U.S.C. §§ 1962(a) and (c) by using income from racketeering activity to establish or operate an enterprise, and by conducting or participating in an enterprise through racketeering activity.  Plaintiffs also allege that all Defendants conspired to violate RICO, in violation of 18 U.S.C. § 1962(d).  Plaintiffs further allege that Singh violated 18 U.S.C. § 1962(b) by acquiring and maintaining control over the enterprise involved in the racketeering activity.

"RICO provides a private cause of action for '[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter.'"  *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 6 (2010) (quoting 18 U.S.C. § 1964(c)).  To state a claim for damages under RICO, a plaintiff "must allege that the defendant has violated the substantive RICO statute, 18 U.S.C. § 1962 (1976), commonly known as 'criminal RICO.'"  *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983), *cert. denied Moss v. Newman*, 465 U.S. 1025 (1984).  To succeed with such claims at the pleadings stage, the plaintiff must sufficiently allege:  "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign

15

commerce." *Id.* (citing 18 U.S.C. § 1962(a)–(c)).  Further, to invoke RICO's civil remedies, a "plaintiff must allege that he was injured in his business or property by reason of a violation of section 1962." *Id.* (internal quotation marks and citation omitted).  To state a claim for a violation of § 1962, a plaintiff must "independently allege both an enterprise—a group of persons in an ongoing association—and a pattern of racketeering activity—a series of allegedly criminal acts." *DeFalco v. Dirie*, 923 F. Supp. 473, 476 (S.D.N.Y. 1996) (quoting *Procter & Gamble v. Big Apple Indus. Bldgs., Inc.*, 879 F.2d 10, 15 (2d Cir. 1989)).

Defendants argue that Plaintiffs have failed to allege a cognizable RICO enterprise.  They also argue that Plaintiffs have failed to sufficiently allege facts constituting predicate acts or a pattern of such predicate acts, or that Defendants proximately caused the purported damages. Finally, Defendants argue that the damages sought are not clear and definite.

### 1. Enterprise

Under RICO, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); *see Moss*, 719 F.2d at 22.  The plaintiff must both "plead the existence of this enterprise" and show that "the enterprise had an independent economic significance from the pattern of racketeering activity." *Moss*, 719 F.2d at 22 (internal quotation marks and citations omitted).  "For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a fraudulent course of conduct and work together to achieve such purposes." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 447 (S.D.N.Y. 2004) (internal quotation marks and citation omitted).

Plaintiffs argue that Defendants comprise a RICO enterprise in three ways:  (1) all Defendants are an association-in-fact, Am. Compl. ¶ 114, (2) all of Singh's companies (including

those not named in this litigation) collectively comprise an enterprise, *id.* ¶ 116, and (3) each of Pinder and 30 Below constitute their own enterprises, *id.* ¶ 113.

With regard to Pinder and 30 Below each constituting their own enterprises, the Second Circuit has acknowledged that "any legal entity may qualify as a RICO enterprise," but "[t]he enterprise must be separate from the pattern of racketeering activity and distinct from the person conducting the affairs of the enterprise." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (internal quotation marks and citations omitted). However, the Second Circuit has also held that a legal entity or corporation "cannot be both the 'enterprise' and the 'person.'" *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120–21 (2d Cir. 2013) (noting that "the plain language and purpose of [RICO] contemplate that a *person* violates the statute by conducting an *enterprise* through a pattern of criminality" and therefore "a corporate person cannot violate the statute by corrupting itself"). In *Cruz*, the Second Circuit held that this distinctness requirement "cannot be evaded by alleging that a corporation has violated [RICO] by conducting an enterprise that consists of itself plus all or some of its officers or employees." *Id.* at 121. Plaintiffs allege that Singh is the president, principal officer, and sole or controlling shareholder of Pinder and 30 Below, making him indistinguishable from either entity. Am. Compl. ¶ 7. As Plaintiffs have not alleged the existence of any RICO "person" outside of Singh and his employees, Plaintiffs have not successfully alleged that Pinder and 30 Below alone each constitute an enterprise.

Plaintiffs' arguments that Singh, Pinder, and 30 Below qualify as an association-in-fact also fail. Again, the distinctness requirement is not satisfied with regard to Singh and either Pinder or 30 Below, as Singh is alleged to be the president, principal officer, and sole or controlling shareholder of both companies. Am. Compl. ¶ 7. Further, Pinder and 30 Below

17

alone also cannot form an association-in-fact because they fail the distinctness requirement. The Second Circuit has held that "corporations that are legally separate but operate within a unified corporate structure and [are] guided by a single corporate consciousness" also fail the "enterprise" and "person" distinctness requirement. *Cruz*, 720 F.3d at 121 (internal quotation marks and citations omitted). *See also U1it4less, Inc. v. FedEx Corp.*, 871 F.3d 199, 206–07 (2d Cir. 2017) (finding that defendant corporation and two wholly-owned subsidiaries did not constitute an enterprise as there was no evidence that any of the entities "operated outside of a unified corporate structure guided by a single corporate consciousness" even though all three had different board members and did not participate in each other's day-to-day operations); *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344–45 (2d Cir. 1994) (determining that a group of three individuals and a bank were not distinct enough to form an enterprise as all three were employed at the bank and all actions taken by the three were on behalf of and directly related to the bank); *Black Radio Network, Inc. v. NYNEX Corp.*, 44 F. Supp. 2d 565, 580–81 (S.D.N.Y. 1999) (holding that a corporate entity, its affiliates and their employees "cannot constitute a RICO enterprise by themselves"). Courts in this district have also held that when the alleged "enterprise" includes "the corporate defendant, related companies, and its employees or agents, and no other unrelated parties" it fails to be sufficiently distinct from the "person." *Palatkevich v. Choupak*, Nos. 12 Civ. 1681 (CM), 12 Civ. 1682 (CM), 2014 WL 1509236, at *14 (S.D.N.Y. Jan. 24, 2014); *see also Mohr-Lercara v. Oxford Health Ins., Inc.*, No. 18 Civ. 1427 (VB), 2019 WL 1409479, at *11 (S.D.N.Y. Mar. 28, 2019) (finding that separately incorporated entities which are "corporate siblings" similarly constitute a "unified corporate structure" as a corporate parent and its subsidiaries).

Here, Plaintiffs themselves allege that Singh, Pinder, and 30 Below are "nothing more than alter egos of one another." Am. Compl. ¶ 112.  Plaintiffs also allege that Pinder and 30 Below have no employees or "business existences" of their own outside of those they share with each other, and that both companies share assets as well.  *Id*. ¶¶ 103–04. As Plaintiffs' own allegations indicate that Pinder and 30 Below are related companies or "corporate siblings" guided by Singh and his employees, they cannot suffice as an association-in-fact.

With regard to Plaintiffs' claims that all of Singh's companies (including those unnamed in the amended complaint) collectively form an enterprise, the distinctness requirement is still not met.  As Plaintiffs allege that Pinder and 30 Below have no employees or business existences of their own outside those they share, Plaintiffs also state that the same holds true for Singh's other companies.  *Id*. ¶¶ 99, 103.  Since Plaintiffs' allegations are that these companies "are legally separate but operate within a unified corporate structure and [are] guided by a single corporate consciousness," Singh's companies cannot collectively form an enterprise.  *Cruz*, 720 F.3d at 121.

Therefore, Plaintiffs have failed to allege facts establishing a RICO enterprise, and Plaintiffs' substantive RICO claims must be dismissed.

2.  *Racketeering Activity*

However, even if a RICO enterprise had been adequately alleged, several of Plaintiffs' alleged predicate acts also fail to state a claim:  those of mail fraud, wire fraud, and money laundering, as discussed *infra*.  Moreover, as discussed below, Plaintiffs have further failed to allege a pattern of racketeering activity.

a.  *Predicate Acts*

RICO's definitional section, 18 U.S.C. § 1961(1), includes a laundry list of criminal statutes that, if violated, could constitute "racketeering activity."  To state a RICO claim, a

19

plaintiff must allege two or more predicate acts of racketing activity. *Reich v. Lopez*, 858 F.3d 55, 59 (2d Cir. 2017) (citing 18 U.S.C. § 1961(5)). Plaintiffs allege that Defendants committed the following predicate acts: Mail Fraud (in violation of 18 U.S.C. § 1341), Wire Fraud (in violation of 18 U.S.C. § 1343), Theft from a Foreign or Interstate Shipment (in violation of 18 U.S.C. § 659), Money Laundering (in violation of 18 U.S.C. § 1956), and Extortion (in violation of 18 U.S.C. § 1951 and § 155.05 of New York Penal Law).

Defendants argue that Plaintiffs have failed to allege predicate acts of mail fraud, wire fraud, and money laundering. For the reasons discussed below, they are correct. However, Defendants have not sufficiently challenged Plaintiffs' allegations of interstate theft and extortion.[9]

### i. Mail and Wire Fraud

Plaintiffs allege that Defendants' promises of payment, and the payments they did transfer, constitute mail and wire fraud because Defendants sent electronic mail, made telephone calls, transmitted text messages, and induced Plaintiffs to ship Goods to Defendants, in furtherance of their scheme to defraud Plaintiffs. Am. Compl. ¶¶ 219–20. Defendants argue that Plaintiffs have not adequately pleaded facts to support an inference that mail or wire fraud was committed. "The essential elements of [mail and wire fraud] are (1) a scheme to defraud[;] (2) money or property as the object of the scheme[;] and (3) use of the mails or wires to further the scheme." *United States v. Weaver*, 860 F.3d 90, 94 (2d Cir. 2017) (citing *United States v. Binday*, 804 F.3d 558, 569 (2d Cir. 2015)). For both types of fraud, "the object of the scheme to defraud must be *money or property*." *Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 600 (S.D.N.Y. 2015). Under RICO, fraud-based predicate acts "must be pleaded with

---

[9] Defendants reference extortion, but do not specifically state in what way the extortion claims are deficient.

particularity in accordance with Federal Rule of Civil Procedure 9(b)," so the plaintiff must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that [each] defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56, 58 (2d Cir. 2016) (internal quotation marks and citations omitted).

Defendants also argue that, under the standard set forth in *Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc.*, Plaintiffs need to show that the fraud claims are predicated on something more than a false promise to perform the terms of a contract. *See* 98 F.3d 13, 20 (2d Cir. 1996) ("[A] plaintiff must either:  (i) demonstrate a legal duty separate from the duty to perform under the contract . . . or (ii) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract . . . or (iii) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages.").  Plaintiffs argue in response that *Bridgestone/Firestone* only applies to claims of fraud brought under New York law.

However, it is unnecessary to reach the question of whether the *Bridgestone/Firestone* rule applies here because Plaintiffs have failed to adequately allege that Defendants consciously set out to defraud them or that Defendants' behavior went beyond the non-performance of promises.[10]  While Plaintiffs have sufficiently identified purportedly fraudulent statements, such as Singh's statements that payment would be forthcoming, Plaintiffs have not sufficiently alleged why those communications were fraudulent, as required under Federal Rule of Civil Procedure

---

[10] Courts in this District have disagreed on whether the *Bridgestone/Firestone* rule applies to RICO cases.  *Compare Lavastone Cap. LLC v. Coventry First LLC*, Nos. 14 Civ. 7139, 14 Civ. 7967 (JSR), 2015 WL 1939711, at *5 n. 7 (S.D.N.Y. Apr. 22, 2015) (determining that RICO mail, wire, and bank fraud predicate acts are not subject to the common law limitations of *Bridgestone/Firestone*), *with Silvester v. Selene Fin., LP*, No. 7:18 Civ. 2425 (NSR), 2019 WL 1316475, at *7 (S.D.N.Y. Mar. 21, 2019) (applying the *Bridgestone/Firestone* rule to RICO mail and wire fraud predicate acts).

9(b).  *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1176 (2d Cir. 1993).  Rather, Plaintiffs

must allege specific facts to support the inference that Defendants did not intend to keep their

promises.  *Gerstenfeld v. Nitsberg*, 190 F.R.D. 127, 132 (S.D.N.Y. 1999) ("[M]ere failure of

promised performance has never permitted a factual finding that defendants never intended to

perform." (internal quotation marks and citation omitted)); *Mills v. Polar Molecular Corp.*, Nos.

91 Civ. 0249 (RWS), 91 Civ. 0902 (RWS), 1992 WL 309592, at *7 (S.D.N.Y. Oct. 14, 1992)

("Although Rule 9(b) provides that intent and 'other condition of mind' [may] be averred

generally, plaintiffs must nonetheless prove some factual basis for conclusory allegations of

intent." (citation omitted)).

 Plaintiffs describe communications from Defendants about promises to pay them, but

beyond conclusory statements that these were "false assurances of payments or future orders" or

"false promises," Am. Compl. ¶¶ 29, 39, Plaintiffs do not allege anything else that could serve as

a factual basis for Defendants' intent.  When Plaintiffs do allege specific facts about fraudulent

intent, it is regarding communications made *from* Plaintiffs to Defendants, rather than from

Defendants.  *Id.* ¶ 39 (describing an email from Dhanwani to Singh alleging that "[Singh's]

words are not true!").  Plaintiffs suggest that numerous unfulfilled contracts imply fraudulent

intent on the part of Defendants, Pls.' Opp. at 20–21, but similar claims of unfulfilled contracts

have been rejected as the basis for inferring fraudulent intent.  *See Mills*, 12 F.3d at 1176–77

(holding that fraudulent intent could not be inferred from the defendant entering multiple

contracts with a plaintiff and not performing on any of them since "[c]ontractual breach, in and

of itself, does not bespeak fraud"); *LCS Group, LLC v. Shire LLC*, No. 18 Civ. 2688 (AT), 2019

WL 1234848, at *10–11 (S.D.N.Y. Mar. 8, 2019) (finding that allegations that defendants signed

a contract despite having no intent to comply with the terms did not satisfy a fraud-based RICO

claim); *Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. Ltd.*, 154 F. Supp. 2d 682, 694

(S.D.N.Y. 2001) ("That the complainant has not recovered a contractual loss, for example, is

insufficient to prove the threat of future criminal acts by the defendants." (citation omitted)).

Thus, while Plaintiffs have sufficiently alleged the contents of the statements and who said them,

they have failed to allege facts that imply a fraudulent intent behind those communications and

have thus failed to allege predicate acts of mail and wire fraud.

    *ii.  Money Laundering*

    Plaintiffs allege that Defendants engaged in money laundering by moving assets between

corporate entities to conceal those assets and frustrate the efforts of creditors to recover.  Am.

Compl. ¶ 223.  Defendants argue that Plaintiffs have not sufficiently alleged specific actions

committed by Defendants to adequately plead money laundering as a predicate act.  To establish

a violation of the money laundering statute, 18 U.S.C. § 1956, as a predicate act, a plaintiff must

show "(1) that the defendant conducted a financial transaction; (2) that the transaction in fact

involved the proceeds of specified unlawful activity as defined in § 1956(c)(7); [and] (3) that the

defendant knew that the property involved in the financial transaction represented the proceeds

of some form of unlawful activity."  *United States v. Maher*, 108 F.3d 1513, 1527–28 (2d Cir.

1997).  Additionally, the plaintiff must show that "(a) that the defendant knew 'the transaction

was designed in whole or in part . . . to conceal or disguise the nature, the location, the source,

the ownership, or the control of the proceeds of specified unlawful activity,' 18 U.S.C.

§ 1956(a)(1)(B)(i); or (b) that the defendant conducted or attempted to conduct the transaction

'with the intent to promote the carrying on of specified unlawful activity,' *id*. § 1956(a)(1)(A)(i)."

*Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 322 (S.D.N.Y. 2014).  Beyond a conclusory

statement that Defendants "move assets and obligations" between Singh's companies "to prevent

recovery or claims by the aggrieved parties," Am. Compl. ¶ 174, Plaintiffs do not allege with

sufficient detail any facts that would lead to an inference of a predicate act of money laundering.

As a result, the amended complaint has also failed to allege the predicate act of money

laundering.

b.   *Pattern of Racketeering Activity*

Plaintiffs have also failed to establish a pattern of racketeering activity.  To satisfy a

pattern of racketeering activity, RICO requires "at least two acts of racketeering activity

committed in a 10 year period."  *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229,

242 (2d Cir. 1999) (internal quotation marks and citation omitted).  The continuity needed to

prove this pattern can be either "closed-ended" – which requires the plaintiff to "prove 'a series

of related predicates extending over a substantial period of time'" – or "open-ended" – which

requires the plaintiff to show "a threat of continuing criminal activity beyond the period during

which the predicate acts were performed."  *Id.* (citing *H.J., Inc. v. Northwestern Bell Tel. Co.*,

492 U.S. 229, 239, 242–43 (1989)).

The Second Circuit has "never found predicate acts spanning less than two years to be

sufficient to constitute closed-ended continuity."  *Grace Int'l Assembly of God v. Festa*, 797 F.

App'x 603, 605 (2d Cir. 2019).  Open-ended continuity, however, can be shown either "where

the acts of the defendant or the enterprise [are] inherently unlawful, such as murder or

obstruction of justice, and [are] in pursuit of inherently unlawful goals, such as narcotics

trafficking or embezzlement, or . . . where the enterprise primarily conducts a legitimate business

but there is some evidence from which it may be inferred that the predicate acts were the regular

way of operating that business, or that the nature of the predicate acts themselves implies a threat

of continued criminal activity."  *Id.* at 606 (internal quotation marks and citations omitted).

Plaintiffs argue that Defendants "have established an open-ended pattern of related misconduct."[11]  Am. Compl. at 23.  Plaintiffs allege that Defendants' actions imply a threat of continued criminal activity by referencing five other lawsuits filed against one or more Defendants.[12]  Am. Compl. ¶¶ 156–73.  However, the Amended Complaint does not include sufficient detail about these cases for the Court to infer that the well-pleaded predicate acts in this case are the regular way Defendants operate their businesses, or that there is an implied threat of continued criminal activity.  This is especially true given that, as described in the previous subsection, all of Plaintiffs' alleged predicate acts, except for the extortion and interstate theft allegations, fail to state a claim.  Thus, while the descriptions of these lawsuits all have the common thread of the nonpayment of goods, that does not establish a pattern of the more particular predicate acts of extortion and interstate theft that Plaintiffs have adequately alleged here.[13]  For example, it is not clear from the Complaint that there is a continued threat of interstate theft in relation to the scheme, given that these allegations stem only from the Uncleared Containers.[14]

---

[11] Plaintiffs also assert for the first time in their opposition papers that they have established a closed-ended pattern.  Doc. 33, Pls.' Opp.  However, Plaintiffs cannot amend their complaint by asserting new facts or theories for the first time in opposition to Defendants' motion to dismiss.  *Tomlins v. Vill. of Wappinger Falls Zoning Bd. of Appeals*, 812 F. Supp. 2d 357, 363 n. 9 (S.D.N.Y. 2011); *Scott v. City of N.Y. Dep't of Corr.*, 641 F. Supp. 2d 211, 229 (S.D.N.Y. 2009), *aff'd*, 445 F. App'x 389 (2d Cir. 2011).

[12] These cases are:  *HK Global Asia Export, LTD. v. Dhall*, No. 14 Civ. 8757 (S.D.N.Y.), *H. Daya Int'l Co. v. Dhall*, No. 16 Civ. 9713 (S.D.N.Y.), *La Bella Int'l, Inc. v. Dhall*, Index No. 656712/2016 (N.Y. Sup. Ct.), *B.B. Star Industries LTD. v. Dhall*, No. 18 Civ. 03669 (S.D.N.Y.), and *Kapoor Cotsyn Exports v. Dhall*, No. 19 Civ. 00971 (S.D.N.Y.).  *Id.* ¶¶ 156–73.

[13] Indeed, the causes of action in these lawsuits, and the extent to which they overlap with the predicate acts alleged in this case, somewhat varies.  As relevant to this case, plaintiffs brought breach of contract, conversion, and fraud claims in *HK Global*, unjust enrichment claims were brought in *B.B. Star*, conversion claims were brought in *Kapoor Cotsyn*, and it appears that breach of contract claims were brought in *HK Global*, *H. Daya* and *La Bella*.  *Id.*

[14] However, even if all of the alleged predicate acts were well-pleaded, to the extent that Plaintiffs allege that the scheme was designed to fraudulently deprive them of their assets, Plaintiffs would also need to allege facts showing the scheme was not "inherently terminable."  *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995).

Moreover, the Amended Complaint only alleges that these claims were brought against various of the Defendants at various times, not that Defendants actually committed these violations.  On a motion to dismiss, this Court may take judicial notice of these lawsuits to establish the existence of such actions, but "not for the truth of the matters asserted."  *Global Network Commc'ns, Inc.*, 458 F.3d at 157.  Thus, while this Court takes notice of the existence of those claims brought against one or more Defendant, it cannot adopt the factual allegations asserted in those actions as true.  Additionally, the Court notes that none of these cases has resulted in an admission of liability.

Finally, Defendants also argue that Plaintiffs have failed to adequately establish a pattern of racketeering activity for each Defendant.  *See First Capital Asset Mgmt.*, 385 F.3d at 180 (evaluating the RICO allegations with respect to each defendant individually).  Plaintiffs do not adequately address this point in their opposition papers, broadly stating that "Defendants, collectively, as an enterprise, and/or as alter egos of one another" committed the requisite number of qualifying predicate acts to establish a pattern of racketeering.  Pls.' Opp. at 21.  Plaintiffs' failure to address this claim lends additional support to the dismissal of their RICO claims.  *See Lipton v. County of Orange*, 315 F. Supp. 2d 434, 446 ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

### 3.  *Proximate Cause and Clear and Definite Damages*

As Plaintiffs have failed to sufficiently allege substantive RICO claims, this Court declines to consider whether they have sufficiently alleged proximate cause between the predicate acts and injury and whether Plaintiffs have pleaded damages with the necessary specificity.

E.     **RICO Conspiracy Claim**

Section 1962(d) proscribes agreements to conduct or to participate in the conduct of a RICO enterprise's affairs through a pattern of racketeering activity.  *United States v. Pizzonia*, 577 F.3d 455, 462 (2d Cir. 2009), *cert. denied*, 558 U.S. 1115 (2010); *see also City of New York v. Chavez*, 944 F. Supp. 2d 260, 268–69 (S.D.N.Y. 2013) (stating that to establish a RICO conspiracy, the "plaintiff must prove "(1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive RICO violation; (2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the conspiracy in some manner"); *Loop Prod. v. Cap. Connections LLC*, 797 F. Supp. 2d 338, 350 (S.D.N.Y. 2011) ("A defendant can commit a RICO conspiracy where he 'know[s] the general nature of the conspiracy and that the conspiracy extends beyond [his] individual role[ ].'" (quoting *United States v. Zichettello*, 208 F.3d 72, 99 (2d Cir. 2000))).  In this case, because Plaintiffs' RICO conspiracy claims are entirely dependent on the substantive RICO claims, the conspiracy claims must be dismissed as well.  *See First Capital Asset Mgmt.*, 385 F.3d at 164.

IV.     **LEAVE TO AMEND**

In their opposition to Defendants' motion, Plaintiffs request leave to amend their complaint to the extent that the Court determines that factual allegations are lacking.  Pls.' Opp. Under Rule 15(a) of the Federal Rules of Civil Procedure, the Court "should freely give leave [to amend] when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Nonetheless, denying leave to amend is proper where the amendment would be futile.  *Holmes v. Grubman*, 568 F.3d 329, 334-35 (2d Cir. 2009).  An amendment is considered futile where the plaintiff is unable to demonstrate that he would be able to cure the defects in a manner that would survive a motion to dismiss.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with [the

plaintiff's] cause of action is substantive; better pleading will not cure it. Repleading would thus be futile. Such a futile request to replead should be denied.").

Here, the Court grants Plaintiffs leave to amend their RICO claims.  Defendants do not oppose Plaintiffs' request in their reply brief, Doc. 34, Defs.' Reply, and Plaintiffs have only made one amendment so far.

## V.   CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED.  Plaintiffs are granted leave to replead their claims.  If Plaintiffs wish to file a Second Amended Complaint, they must do so on or before April 13, 2021.

The Clerk of Court is respectfully directed to terminate docket numbers 24 and 30.

It is SO ORDERED.

Dated:   March 23, 2021
New York, New York

_____
Edgardo Ramos, U.S.D.J.